Michael J. Frevola
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

**JUDGE KOELTL**

**08 CV 2511**

ATTORNEYS FOR PLAINTIFF
TASFIYE HALINDE AHU TRANS DENIZCILIK
VE TICARET LIMITED SIRKETI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

TASFIYE HALINDE AHU TRANS DENIZCILIK VE TICARET
LIMITED SIRKETI,

        Plaintiff,

     -against-

NATEUS VERZEKERINGEN f/k/a BELGAMAR BELGISCHE
ZEEVERZEKERINGSMAATSCHAPPIJ N.V. a/k/a
COMPANIE BELGE D'ASSURANCES MARITIMES S.A.,

        Defendant.

---

08 Civ. _____

**VERIFIED
COMPLAINT**

Plaintiff, Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi ("Ahu Trans"
or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint
against Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a
Companie Belge D'Assurances Maritimes S.A. ("Nateus" or "Defendant"), alleges as follows:

     1.     This is a case of admiralty and maritime jurisdiction as hereinafter more fully
appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil
Procedure.

2.      At all times material herein, Ahu Trans is and was a foreign business entity organized and existing under the laws of Turkey.

3.      Upon information and belief, at all times material herein, defendant Nateus is and was a business entity organized and existing under the laws of Belgium with its principal place of business at Frankrijklei 79, 2000 Antwerp, Belgium.

4.      At all times material herein, Ahu Trans was the owner of the M/V KAPTAN SEFER ("Vessel").

5.      At the time of the incident that is the subject matter of this action, the full name of Defendant was "Belgamar Belgische Zeeverzekeringsmaatschappij N.V." (in Flemish) and "Companie Belge D'assurances Maritimes S.A." (in French).  The present name of Defendant after a series of mergers is "Nateus Verzekeringen."

6.      On our about September 30, 1997, the Vessel suffered main engine failure during a voyage from Galatz, Romania to Eleusis, Greece (the "Voyage").  As a result, the Vessel called at Aliaga Port, Turkey.

7.      Nateus was the cargo underwriter of the cargo aboard the Vessel during the Voyage.

8.      Subsequently, general average was declared and the concerned parties agreed to transfer the cargo to another vessel.  To this end, Ahu Trans and Nateus entered into a contract. Specifically, the parties agreed that "[t]ransshipment of the cargo will be carried out by cargo interests at their expense at NEMRUT Port, Aliaga Bay on to a chartered 'On Carrying' vessel for delivery to Eleusis."  A true and correct copy of the contract between Ahu Trans and Nateus is annexed hereto as Exhibit 1.

9.    Although Nateus undertook to transfer the cargo, the actual transfer of the cargo was performed by an agent of Nateus.

10.    On or about November 24, 1997, during the transshipment of the cargo from the Vessel, a load of approximately 15 metric tons of cargo fell into the hold of the Vessel causing a sudden movement of the Vessel to the port side and a list of approximately 30-40 degrees.  Due to this sudden movement, the cargo remaining on board the Vessel shifted and struck the Vessel's holds' bulkheads and damaged the Vessel's hull.

11.    As a result of the damage caused by the aforementioned incident, the Vessel flooded and sank within three hours of sustaining the aforementioned damage.

12.    On or about November 23, 1998, Ahu Trans brought suit against Nateus for the recovery of US$500,000.00 for damages suffered due to the breach of Nateus' contractual obligations ("First Claim") at the Aliaga Civil Court of First Instance in Aliaga, Turkey ("Civil Court").

13.    In a decision dated September 29, 2004, the Civil Court found in Ahu Trans' favor and Nateus was held liable to Ahu Trans in the amount of US$486,080.00 plus interest on the First Claim.  A true and correct copy of the September 29, 2004 decision is annexed hereto as Exhibit 2.  Specifically, the Civil Court held (under the heading HUKUM-JUDGMENT on page 6 of the decision):

> JUDGMENT:  In light of the reasons stated above, The Court hereby holds that:
> \*    \*    \*    \*    \*
> 2) The claim against defendant En – Mar Vapur Acentasi Deniz ve Tic. A.S. on behalf of Belgamar – Antwerp to be accepted that the defendant to pay the Turkish Liras equivalent as per the official exchange rates of the Central Bank of the Republic of Turkey on the date of actual payment of USD 486,080 to the claimant; and that interest at the highest annual rate applied by the State Banks to USD accounts to be accrued on the ordered amount, pursuant to the sec. 4/2 of the Code numbered 3095."

3

14.    For the sake of clarity, En–Mar Vapur Acentasi Deniz ve Tic. A.S., referenced in the court's holding translated above, is the agent of Nateus (formerly known as Belgamar Belgische Zeeverzekeringsmaatschappij N.V.).  Under Turkish procedural rules, a foreign entity such as Nateus is named in a lawsuit through its local agent, but the only party liable for such a claim is the foreign entity and not the local agent named under the governing procedural rules.

15.    Nateus appealed the ruling by the Civil Court to the Supreme Court in Turkey.  In a decision dated March 30, 2006, the Supreme Court affirmed the Civil Court's findings with respect to fault, but overruled the Civil Court's determination of damages.  A true and correct copy of the March 30, 2006 is annexed hereto as Exhibit 3.

16.    On or about November 25, 2002, Ahu Trans brought another suit against Nateus for additional damages due to Nateus' breach of its contractual obligations arising from the same incident involving the Vessel in the amount of US$258,722.00 ("Second Claim").

17.    With respect to the Second Claim, the Civil Court decided to consolidate the suit with the First Claim, and both claims are being heard before the Civil Court for the reassessment of damages in accordance with the reasoning of the Turkish Supreme Court.

18.    On the First Claim in the amount of US$500,000.00, the interest accrued in Turkey to date is approximately US$350,000 making the total amount due to Ahu Trans for the First Claim US$850,000.00.

19.    On the Second Claim in the amount of US$258,722.00 the interest accrued in Turkey to date is approximately US$68,000.00 making the total amount due to Ahu Trans for the Second Claim US$326,722.00.

20.    Based on the foregoing, as best as can be estimated at the present time, Nateus owes Ahu Trans US$1,176,722.00.

21.     Upon information and belief it will take an additional three years to bring this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs (allowed under Turkish law):

| | |
|---|---|
| Interest (6% on $1,176,722.00 for three years): | $ 211,809.96 |
| Attorneys' fees | $ 300,000.00 |
| Total Principal Claim: | $1,176,722.00 |
| Total Sought: | **$1,688,531.96** |

22.     Nateus is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name(s) of Nateus Verzekeringen and/or Belgamar Belgische Zeeverzekeringsmaatschappij N.V. and/or Companie Belge D'Assurances Maritimes S.A. with, upon information and belief, the following financial institutions: Bank of America, N.A.; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; or any other financial institution within the Southern District of New York.

**WHEREFORE**, Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi prays:

1.     That a summons with process of attachment and garnishment may issue against the defendant, Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A.; and if defendant cannot be found, then that its goods, chattels and credits within the district, and particularly all bank accounts and

other property of Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. with the financial institutions noted above in paragraph 22, may be attached in an amount sufficient to answer plaintiff's claim;

2.     That defendant Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.     That judgment be entered in favor of Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi and against Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. in the amount of US$1,688,531.96 (including estimated interest, expenses and attorneys' fees); and,

4.     That this Court grant Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi such other and further relief which it may deem just and proper.

Dated: New York, New York
       March 12, 2008

                        HOLLAND & KNIGHT LLP

                        By:  _____
                             Michael J. Frevola
                             Lissa Schaupp
                             195 Broadway
                             New York, NY 10007-3189
                             Tel:   (212) 513-3200
                             Fax:   (212) 385-9010

                             *Attorneys for Plaintiff*
                             *Tasfiye Halinde Ahu Trans Denizcilik*
                             *ve Ticaret Limited Sirketi*

## VERIFICATION

STATE OF NEW YORK          )

                                        :ss.:

COUNTY OF NEW YORK       )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

      I am a member of the firm of Holland & Knight LLP, counsel for Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi ("Ahu Trans"), plaintiff in the foregoing action.  I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge.  I have reviewed documentation provided to me by Ahu Trans and corresponded with Ahu Trans' representatives regarding this matter.  I am authorized by Ahu Trans to make this verification, and the reason for my making it as opposed to an officer or director of Ahu Trans is that there are none within the jurisdiction of this Honorable Court.

                                    _____
                                         Michael J. Frevola

Sworn to before me this
12th day of March, 2008

_____
Notary Public

WALLIS BETH KARPF
Notary Public, State Of New York
No. 01KA6047092
Qualified In New York County
Commission Expires August 28, 20 _10_

# 5174956_v1

7

# EXHIBIT 1

05/11'97 13:21   ☎ 003014524514   J J B MODIANO C2   P.02

"

# AGREEMENT.

By virtue of a 'Gencon' Charter Party dated 17th, September, 1997 entered in to by BALKANMAR, hereafter referred to as the 'Charterers' and AHUTRANS DENIZCILIK Ve TICARET Ltd., operators/disponent owners for and on behalf of SUMER FINANSAL KIRALAMA A.S., hereafter referred to as the 'Owner', the "KAPTAN SEFER" was chartered to load a full cargo of hot rolled steel coils at Galatz, Romania for delivery at Eleusis, Greece. The the ship loaded 112 hot rolled steel coils as per the Bill of Lading and sailed from Galatz on 26th. September, 1997

On 1st. October, 1997 the "KAPTAN SEFER" whilst on passage off Bozcaada developed problems with the main engine. The vessel commenced to drift and this condition still pertained at 06:00 hours on 2nd. October. The "GONULTAS" under the same operator and owned by ALTUG DENIZCILIK DISCARET Ltd., was in the vicinity and was ordered to assist the "KAPTAN SEFER" and arrived at the scene at 11:00 hours on 3rd. October and signed a salvage agreement under the TOF terms. Tow connections were established by 14:50 hours the same day and the tow commenced toward the nearest available safe anchorage, Bababurnu due to the prevailing adverse weather conditions. Later, following further inspections of the main engine it was evident that it could not be repaired by the crew. Accordingly, the vessel was towed to the nearest safe port of refuge, Aliaga. The convoy arrived at Aliaga in the morning of 6th. October where the vessel was redelivered.

Subsequent investigations of the main engine determined that the extent of damage was such that the main engine could not be repaired within a reasonable time and at a reasonable cost.

Without prejudice to rights arising out of this matter, the following is provisionally agreed by the signatories to this agreement:

1- It was established by both parties that transshipment of the cargo was a prudent course of action for all interests concerned.

05-MAR-2008 12:55 From:   TO:06 212 2192727   P.1

To:90 212 2192727    P.1
05/11'97  13:22    ☎ 003014524514    JJB MODIANO CZ    P.03

2- The cargo shall be delivered and received by the receivers at Nemrut Port, Aliaga Bay in return for :
           -two remaining original Bills of Lading, and
           -payment of US Dollars 30,000.00 as cargo interests
           contribution. (The method of payment to be agreed separately) .

3- In conjunction with the Owner issuing a delivery order, the Owner will give the original EURO 1 Certificate to the cargo interests.

4 - Both parties to this agreement will release and discharge each other from all claims arising out of the salvage operation.

5- Transshipment of the cargo will be carried out by cargo interests at their expense at NEMRUT Port, Aliaga Bay on to a chartered 'On Carrying' vessel for delivery to Eleusis. The estimated expenditure for which is US Dollars 49,000.00 including, freight (21,000.00 USD) and local towage and other expenses at Aliaga (28,000.00 USD.) which will be paid by cargo interests.

6- The Owner undertakes to assist in this operation by obtaining the necessary permits, custom's clearance, other documentation and formalities required by the Turkish authorities. In addition, the Owner shall assist with the chartering of the replacement vessel.

7 - If the Owner undertakes to arrange the 'On carriage' from Nemrut Port, Aliaga Bay to Eleusis under "Ship to ship, liner in free out" terms, same conditions as per the previous voyage for a lump sum of US Dollars 49,000.00 including towage, freight and other expenses, this amount to be remitted to the Owner before commencement of the operation, (method of payment to be agreed separately). After delivery of all three (3) original Bills of Lading issued by the new ship, the Owner will be released from all related liabilities.

8- The cargo shall be supervised/surveyed jointly by cargo interests and the owner's representative/P&I Club Surveyor at Nemrut Port, Aliaga Bay.

9- For General Average purposes,

-the value of the cargo is considered as US Dollars 551,967.00 C&F. The residual value of the vessel (after the casualty) is stated to be US Dollars 500,000.00.

10 - The salvage service rendered by the "GONULTAS" is assessed to be US Dollars 78,898.00.

11 - This agreement is subject to the approval of the following interested parties:-
a) Cargo Receivers,
b) Charterers,
d) Owner's Underwriters'
e) Vessel's P&I Club
o) Cargo Underwriters,

For and on behalf of
Cargo receivers, Charterers and Cargo Underwriters concerned.

5. Nov 1997

by authority, as agent.

As owners of mv Kapton Safel
10.11.1997

# EXHIBIT 2

06 11 06 02:54

Ç
ALIAĞA
ASLIYE HUKUK MAHKEMESİ
( Ticaret Mahkemesi Sıfatıyla)
SAYI
ESAS NO        1998/ 570
KARAR NO       2004/ 452              K A R A R

| | |
|---|---|
| HAKİM | : AHMET METİN ÖZEN 24/62 |
| KATIP | : SERPİL AYDINER                    181 |
| DAVACI | : AHU Trans Denizcilik Ltd Şti |
| VEKİLLERİ | : 1- Av Özlem Şan Oğuzhan. Ş Ahmet Kayar işmk No 2/1-2 Demokrasi meydanı Aliağa |
| | : 2-Av Metin Kızıldağ vs Abdulağa işh Aliağa |
| DAVALI | : 1-Liman İşletmeleri ve Nakliyecilik San ve Tic A Ş -Nemrut Körfezi Aliağa |
| VEKİLİ | : Av Tahsin Çoğalan- aynı adreste |
| | : 2-BELGAMAR-Antwerp/Belçika izafeten En-Mar Vapur Acenteliği Deniz ve Tic A Ş |
| VEKİLİ | : Av İzzet Hatem,Av.Ata Dinçer vs Gümüşsuyu, İnönü cad Mithatpaşa cad 92/3 Taksim İstanbul |
| DAVA DEĞERİ | : 486 080 ABD Doları |
| D A V A | : ALACAK |
| DAVA TARİHİ | : 23.11.1998 |
| KARAR TARİHİ | : 29.09.2004 |

Davacı vekilinin davalılar aleyhine mahkememizde açtığı alacak davasının yapılan açık yargılaması sonunda

**GEREĞİ DÜŞÜNÜLDÜ :**

DAVA VE İSTEK : Davacı vekili, 23.11.1998 tarihli içeriğini duruşmada da tekrar ettiği, dava dilekçesinde, müvekkili şirkete ait M/V Kaptan Sefer isimli geminin Calatz / Romanya'dan yüklediği 1898,600 M/T Rulo sacı Eleusis Yunanistan'a götürmekte iken, 30.09.1997 tarihinde makine arızası nedeniyle Aliağa Limanına demirlediğini, kaptan tarafından yapılan müracaat sonucu Aliağa Asliye Hukuk Mahkemesinin 1997/438 esas ve 1997/511 sayılı kararıyla KAZA RAPORU tanzim edildiğini, MÜŞTEREK AVARYA ilan edildiğini, geminin tamiri için yükün boşaltılması gerektiğinden yükün başka bir gemiye Yunanistan'a gönderilmesi hususunda yük ilgilileri ile mutabakat sağlandığını, müşterek avarya kapsamında tam ve hasarsız kurtarılan yükün aktarma işleminin yük sigortacısı tarafından yapıldığı sırada gemi ambarında bulunan yükün kaydırılması sonucu geminin battığını, Aliağa Asliye Hukuk Mahkemesinin 1998/ 215 D iş sayılı dosyası ile tespit yaptırdıklarını ve bu dosyada uzman bilirkişiden rapor alındığını, bilirkişinin raporunda geminin batma nedenini tespit ettiğini, bilirkişi raporundaki tespitlere ve bilirkişinin görüşüne göre davacı şirkete ait geminin batmasındaki kusurun davalı Em-Mar Vapur Acenteliği Deniz ve Tic A Ş olduğunu, zira bu davalının yük sigortasının acentesi olduğunu, bu davalının yükün tahliyesi esnasında gereken her türlü tedbiri almadığını, diğer davalı Liman İşletmeleri Nakliyecilik San ve Tic A Ş nin ise yükün tahliyesi için sözleşmeyi bizzat bu davalı tarafından yapıldığını, ancak bu davalının da gerekli DENETLEMEYİ YAPMADIĞINI ayrıca geminin sol tarafa 40 derece yatmasına rağmen davalı Liman İşletmelerinin hiçbir kurtarma ve yardım çalışması yapmadığını, geminin batmasında her iki davalının da kusuru ve sorumluluğu bulunduğunu belirterek, geminin batmasından dolayı uğranılan mal bedeli tutarı ile batık geminin çıkarılması için harcanan 500.000 USD zararının dava tarihinden itibaren işleyecek %15 USD faiziyle birlikte fiili ödeme tarihindeki Türkiye Cumhuriyeti Merkez Bankası efektif satış kurundan Türk Lirası karşılığının davalılardan müştereken ve müteselsilen tahsiline karar verilmesini istemiştir.

Davacı vekili, 05.03.1999 tarihli ISLAH TALEBİ başlığını taşıyan dilekçesinde ise her ne kadar dava dilekçesinde M/V Kaptan Sefer Gemisinin müvekkiline ait olduğunu belirtmiş iseler de batan geminin mülkiyetinin davacıya ait olmadığını, dava dilekçesinde zuhulen yazıldığını, davacının bu malın işleteni olduğunu belirtmiştir.

1998/ 570 E  2004/ 452 K                                           Sayfa: 2

Davacı şirket yetkilileri tarafından  Beşiktaş 14 Noterliğinde düzenlettirilen
08.10.2001 tarih ve 12098 yevmiye numaralı belgenin 1 numaralı bendinde bu davanın davalılarından Liman
İşletmeleri ve Nakliyecilik San ve Tıc A Ş. aleyhindeki açtıkları davadan FERAGAT ETTİKLERİ dosyada
bulunan resmi belgeden anlaşılmıştır  Davacı vekili ile davalı Liman İşletmeleri vekili tarafından birlikte
imzalanmış 10.10.2001 tarihli dilekçede ise, davacının bu davalı hakkındaki davadan feragat ettiği davalı
vekilinin ise feragatı kabul ettiklerini bildirdikleri anlaşılmıştır  Davacı vekili de 10.10.2001 tarihli celsede
imzasıyla onayladığı beyanında davalı Liman İşletmeleri aleyhindeki davadan FERAGAT ETTİKLERİNİ
ve herhangi ücret ve mahkeme masrafı istemediklerini bildirmiş, aynı oturumda davalı Liman İşletmeleri
vekili de imzasıyla onayladığı bildiriminde feragatı kabul ettiklerini,  mahkeme gideri ve ücreti vekalet
istemediklerini bildirmiştir
**CEVAP VE SAVUNMA:** Davalı Liman İşletmeleri ve Nakliyecilik San ve Tıc A.Ş. vekili cevap
dilekçesinde; davanın zaman aşımına uğradığını, M/V Kaptan Sefer Gemisinin malikinin Sumer Finansal
Kiralama A Ş  olduğunu, bu nedenle davacının bu davada davacı sıfatının bulunmadığını, davacı aleyhine
müvekkili şirket tarafından Aliağa Asliye Hukuk (Ticaret) Mahkemesinin 1997/563 esas sayılı dosyasıyla
dava açtıklarını, bu davanın halen derdest olduğunu, her iki dava arasında bağlantı bulunduğu, bu nedenle
birleştirmeleri gerektiğini, ayrıca davaya Ticaret Mahkemesi sıfatıyla bakılması gerektiğini, ilk itirazları olarak
ileri sürmüş, esas yönünden de ; M/V Kaptan Sefer ısımlı Geminin Galatz/ Romanya 'dan yüklediği
1 898 600 m/ton rulo sacı , Elephsis-Yunanistan''a götürmekte iken 30 09 1997 tarihinde Çanakkale
/Bababurnu yakınlarında makinalarının arızalanıp yoluna devam edemediğinden ve bu sırada mevcut bulunan
fırtına sebebiyle de gemi kaptanı ve adamlarının  sevk ve idaresinden çıkarak sürüklendiğinden M/V Gendil
ısımlı gemiyle çekilerek 05 10 1997 tarihinde Aliağa Limanına getirilerek demirlendiğini , yaklaşık 49 gün
Aliağa limanında demirli kaldığını kaptanı tarafından Aliağa Asliye Hukuk Mahkemesinin 1997/438 esas
1997/351 sayılı kararı ile deniz raporu tanzim edildiğini , ve kaptan tarafından MÜŞTEREK AVARYA da
edildiğini, Aliağa asliye Hukuk mahkemesinin 1997/157 D İş esas 1997/113 karar sayılı dosyasına ibraz
edilen bilirkişi raporuna göre geminin denize ve yola elverişsiz hal alması , tamirinin gerekmesi, durumu hal
olduğundan gemi ve yük ilgilileri aralarında mutabakata varılarak gemi içindeki yükün bir başka gemi ile
Yunanistan'a gönderilmesine ve yükün aktarılmasını da yük sigortacısının yapmasına karar verdiklerini , ve
sigortacısının acentesi diğer davalı "EN-MAR Vapur Acenteliği Deniz ve Tic  A Ş "nin de müvekkili şirkete
başvurarak  iki gemi arasında yük aktarması işinin gerçekleştirilmesi için beş nolu rıhtımın yalnızca  tahsis ve
kiraya verilmesini talep ettiğini, müvekkili şirketinde beş nolu rıhtımı Kaptan Sefer ve M/V Tase gemilerine
yük aktarmaları için yalnızca tahsis ettiğini, kiraya verdiğini, başkaca bir hizmet vermeyi deruhte etmediğini,
Kaptan Sefer gemisinin Uzmar Römorkörü ile Aliağa Limanından Nemrut Limanına 22 11 1997 tarihinde
çekilerek müvekkiline ait beş nolu rıhtıma yanaştırıldığını, aynı rıhtıma yük aktarılacak olan M/V Tase
gemisinin de yanaştığını , Yük Aktarma işleminin yük sigortacısı tarafından yapıldığını, müvekkilinin sadece
beş nolu rıhtımı bu gemilere tahsis ettiğini, yük aktanlması için gerekli her türlü makine ve ekipmanın  mesela
vinç temininin , lashing ve takozlama işlerinin münhasıran yük sahibine , gemiden gemiye aktarılan malın
takibi ve kontrolünün de her iki gemi personeline ait olduğunu, gemide oluşacak  hasarlardan yük sahibinin
sorumlu olacağının sözleşmede açıkça belirtildiğini, yük sigortacısının acentesi diğer davalı şirketin dava dışı
Ayhan Nakliyat San.Tic A Ş  'den operatörü ile birlikte mobil sahil vinci kiraladığını ve bunun ile her iki
gemi kaptan ve görevlendirdikleri diğer şahısların emir ve talimatları , gözetimleri altında yük aktarılması
devam ederken gemide bulunan toplam 112 adet rulodan 78 adedinin Tase isimli gemiye aktarıldığını, ve
kaptan Sefer gemisinde kalan 34 rulo yük aktarılırken 23.11.1997 günü saat 21 40 civarında yüklerin
kayması sonucu önce geminin iskele tarafına yuttiğini, ve daha sonrada makine dairesine ve ambarına su
girmesi üzerine de 24.11.1997 günü Saat 01.30 civarında battığını , davaya konu olayın bu şekilde meydana
gelmesine karşın davacı vekilinin olayı ve gelişimi gerçeğe aykırı olarak dilekçede ileri sürdüğünü, gemileri
tahmil ve tahliye , boşaltma işinin tamamen gemi kaptanının sorumluluğunda olduğunu, davacı tarafından
yaptırılan tespitlerin ve tespit dosyalarına ibraz edilen bilirkişi raporlarını kabul

_98/ 570 E  2004/ 452 K                                                    Sayfa 3

etmediklerini ayrıca müvekkili şirketin yapılan işin denetlenmesi konusunda bir görevinin de bulunmadığını, denetleme görevlerinin de gemi kaptanına ait olduğunu , kaldı ki müvekkilinin yük aktarmasını üstlenmediğini, müvekkili şirketin hiçbir kurtarma ve yardım çalışması yapmadığı yolundaki iddialarının da doğru olmadığını, tum bunlardan dolayı müvekkili şirkete husumet yöneltilemeyeceğini , Kaptan Sefer isimli geminin Başak Sigorta A Ş nezdinde sigortalı olduğunu ve sigortacının ibraname sağlığı davacıya tazminat ödediğini, batık geminin halen battığı yerde durduğunu , çıkartılmadığını, istemin hayali ve fahiş olduğunu belirterek davanın reddini istemiştir

Davalı Belgamar-Antwerp/Belçika'ya izafeten En-Mar Vapur Acenteliği Deniz ve Tic A Ş vekili de 29 12 1998 tarihli cevap dilekçesinde , müvekkili şirketin taraf sıfatı bulunmadığını, gerek asaleten gerekse izafeten davalı olarak gösterilmesinin mümkün olmadığını , müvekkili şirketin Belgamar Antwerp/Belçika adlı yabancı firmanın acentesi olmadığını , dava konusu, ihtilafta asile izafeten davalı olarak gösterilmesine neden olacak hiçbir bağlantı bulunmadığını, bu nedenle taraf sıfatı olmayan müvekkili şirket karşı izafeten dahi davada açılamayacağını belirterek taraf sıfatı yokluğu nedeni ile müvekkili şirket En Mar Vapur Acenteliği Deniz ve Tic A Ş hakkındaki davanın usulden reddine karar verilmesini istemiştir

Davalı Belgamar Antwerp/Belçika'ya izafeten EN-mar Vapur Fcenteliği Deniz ve Tic A Ş vekilleri 22.12.1999 tarihli cevap dilekçesinde , husumet itirazlarının 30.11 1999 tarihli oturunda red edildiğini ancak bu savunmada ısrar ettiklerini ve bu ara kararından dönülmesini istediklerini belirterek sekiz sahifeden ibaret cevap dilekçesinde esas yönünden özetle, dava dilekçesinde iki numaralı davalı olarak gösterilen "Belgamar- Antwerp/Belçika Yük Sigortasına izafeten hakkında dava açılan müvekkili En Mar şirketi arasında hiçbir akti ilişki olmadığını ve halen de bulunmadığını, bundan dolayı yapılan tebligatın geçerli olduğunun kabulü mümkün olmadığını, davacı şirketin aynı geminin batma olayı ile ilgili kiracısı Balkanınar Shipping Ant Trading Ltd " Şirketi aleyhine, taşıma sözleşmesinde mevcut tahkim şartına dayanarak İngiltere'de hakemi huzurunda dava açtığını, aynı konuda iki dava açılmış olduğundan, bu davanın reddi gerektiğini, davacının geminin donatanı olmadığını, kiracı ve işleteni olduğunu, dava dilekçesinin olaylar bolumunde anlatılanların gerçeği yansıtmadığını, dava dosyasına ibraz edilen bilirkişi raporlarının da kendilerine tebliğ edilmediğini, bu nedenle raporlarda ileri sürülen kusur ve sorumlulukları kabul etmediklerini, dava konusu geminin donatanı Sümer Finansal Kiralama Şirketi olduğunu, bu nedenle davacının bu gemi ile ilgili dava hakkı bulunmadığını, davanın husumet yokluğu nedeniyle reddi gerektiğini öte yandan geminin Başak Sigorta nezdinde sigortalı olduğunu, gemi kıymetinin bu sigorta tarafından tazmini gerektiğini, haricen yaptıkları araştırmaya göre sigorta şirketi tarafından Sümer Finansal Kiralama AŞ ne yaklaşık 150 000 000 000 TL. nin ödenmiş olduğunu ve davacının batan geminin çıkarılması için herhangi bir meblağ ödemediğini, buna ilişkin belge de ibraz etmediğini, bundan dolayı da davanın erken açılmış olduğunu belirterek, davanın esas yönüyle reddine karar verilmesini istemiştir Aynı davalı vekili 01 05 2004 tarihli bilirkişi raporuna karşı itirazlarını içeren dilekçesinde, davanın YETKİ, GÖREV, HUSUMET yönünden de reddine karar verilmesini istemiştir.

**DELİLLER**       : Taraf vekilleri, tum delillerini bildirmişlerdir Davaya konu M/V Kaptan Sefer isimli gemiye ait gemi tasdiknamesi, Aliağa Asliye Hukuk (Tic ) Mahkemesinin 1997/563 esas sayılı dosyası, Aliağa Sulh Hukuk Mahkemesinin 1997/62 D.iş sayılı dosyası, Aliağa Asliye (Tic.) Mahkemesinin 1997/? D iş 1997/134 karar sayılı dosyası, Aliağa Asliye Hukuk Mahkemesinin 1997/157 D iş 1997/113 karar ve 1997/438 esas 1997/331 karar sayılı dava dosyaları ile Aliağa Asliye Hukuk Mahkemesinin 1998/ 216 D iş esas 1998/171 karar sayılı dosyasına ibraz edilen ve geminin batış sebebine yönelik bilirkişi raporu, 25.01 1998 tarihli sürvey raporu, Başak Sigorta A. Ş. tarafından davaya konu gemi ile ilgili hasar dosyası, En-Mar Vapur Acenteliği Deniz ve Tic diğer davalı Liman İşletmeleri A.Ş. arasında yapılan rıhtım kira sözleşmesi (22 11.1997 başlangıç, 24.11 1997 bitiş tarihli ), Beşiktaş 14 Noterliğince 04836 yevmiye numarası ile tasdik edilmiş 05 11.1997 tarihli sözleşme, (yükün bedelinin 551 967.USD olaydan sonra geminin kalan bedelinin 500.000 USD olarak kabulüne ilişkin sözleşme ) , aynı Noterlik

1998/ 570 E. 2004/ 452 K                                                                                  Sayfa  4

tarafından 04835 yevmiye numarası ile tasdik edilmiş En-Mar Vapur Acentesi A Ş. tarafından davacıya gönderilen ve aktarma işi ile ilgili her türlü işlemleri yapmak konusunda yetkili olduğuna dair belge, Beyoğlu 36 Noterliğinde tanzim edilen 00681 yevmiye numaralı Sümer Finansal Kiralama A Ş. tarafından muhataplarına keşide edilen ihtarname, Beşiktaş 2 Noterliğinde tanzim edilmiş 6490 yevmiye numaralı davalı En-Mar şirketi tarafından bu şirket adına yetkilendirilen kişilere ait imza sirküleri, davalı En-Mar şirketinin aktarma için Aliağa Gümrüğünden aldığı belge, Başak Sigorta A Ş ile Sümer Finansal Kiralama A Ş arasında davaya konu geminin batması ile ilgili yazışmalar, tazminat makbuzu, her iki tarafça imzalanan tutanaklar, 03.02 1998 tarihli tekne hasarı ekspertiz raporu (Yeditepe Sigorta Ekspertiz Hizmetleri Ltd Şti tarafından tanzim edilmiş), Başak Sigorta nezdinde düzenlenmiş olup da batan Kaptan Sefer Gemisi ile ilgili 2009680 numaralı tekne sigorta poliçesi, 26.09 1997 tarihli batan gemiye ait denize elverişlilik belgesi, Aliağa Asliye Hukuk Mahkemesinde düzenlenen 1997/438 sayılı Deniz Raporu ve buna ekli Kaptan ve Başmakinist raporu, davacı tarafın uğradığını iddia ettiği geminin batmasından dolayı yapmış olduğu harcamalara ilişkin belgeler, İstanbul 6 Asliye Ticaret Mahkemesinin 1999/49 talimat sayılı dosyasına verilen ve mahkememizin 1997/ 563 esas sayılı dosyası ile ilgili bilirkişi kurulu raporu, batan geminin kurtarılması için yapılan yazışmalara ilişkin belgeler, çekme ücreti belgesi, davacı Liman İşletmeleri Nakliye San ve Tic A Ş tarafından davalılar Sümer Finansal Kiralama A.Ş ve Ahu Trans Denizcilik ve Tic Ltd Şti aleyhine açılan ve sonuçlanan 1997/563 esas 2000/ 2886 karar sayılı 28.11.2000 tarihli mahkeme ilamı, dosyaya ibra edilmiş, başka kurumlarda olan belgeler de yukarıda belirtilenler dosyaya getirilmiş ve tüm belgeler birlikte incelenmiştir  Gösterilen tüm deliller toplandıktan sonra, İstanbul Asliye 3 Ticaret Mahkemesi aracılığıyla dosya üzerinden bilirkişi incelemesi yaptırılmıştır  20.03.2001 tarihli oy çokluğu ile verilen raporda çoğunluk oyunu oluşturan iki bilirkişi geminin batması ile ilgili olayda davalı En-Mar A Ş. nın sözleşme ile bu işi üstlenen Belgamar / Belçika'nın ifa yardımcısı olduğu, aktarma borcunu ifası sırasında geminin batmasına sebebiyet verdiği bu yüzden davacının uğradığı zararlardan bu davalının B K nun 100 maddesi uyarınca SORUMLU OLDUĞU,  diğer davalı Liman İşletmeleri A Ş.nin ise, rıhtım tesisini kullandırma borcu dışında başka bir yükümlülüğü olmadığından herhangi bir sorumluluğu bulunmadığı, davacının geminin batması sebebiyle uğradığı navlun kaybı zararı olarak ilk altı aylık dönem için 169 275.ABD Doları, sözleşmenin ikinci altı aylık dönemde ve uzatılacağı kabul edilmesi halinde bu dönem içinde de aynı miktarda olmak üzere 338 550 ABD Doları, çekme anlaşması gereğince ödenen 12 000 ABD Doları, enkaz çıkarılması masrafları olarak da 90 929 ABD Doları ve Başak Sigorta A Ş. ne ödenmek zorunda kalınan 2.320 ABD Doları ödemekle davalı En-Mar'ın yükümlü olduğu yolunda görüş bildirmişler, ayrık oy kullanan üçüncü bilirkişi ise, olayda davalı Liman İşletmeleri A Ş. nin de TTK nun 7 ile B.K nun 50, 51 ve 55 maddeleri gereğince sorumlu olduğunu ve talep edilmesi mümkün zarar tutarının 516.892 64 ABD Doları ve 186.227 01 TL  olacağı yolunda görüş bildirmiştir  Alınan bu bilirkişi raporuna davacı ve davalılar vekilleri ayrı ayrı gerekçelerle itiraz etmişlerdir  Bu kez Kadıköy Asliye 2 Ticaret Mahkemesi aracılığıyla, dosya üzerinden yeniden bilirkişi incelemesi yaptırılmış ve bilirkişi Prof Dr Merih Kemal Oman'dan 11.03 2003 tarihli rapor alınmıştır. Anılan bilirkişide raporunda özetle; geminin batması olayında davalı Belgamar-Antwerp /Belçika nın B K nun 100 maddesi gereğince, akti ilişkiden kaynaklanan ve yardımcı şahsın fiilinden sorumlu kişi olarak sorumluluğu bulunduğunu, hükmün acentenin müvekkili olan Belgamar hakkında tesis edilmesi gerektiğini, davacının zarar miktarının ise, daha önce çoğunlukla rapor veren iki bilirkişinin hesap ettiği zarar tutarının yerinde olduğunu belirtmiş, aynı bilirkişiden zarar hesabı konusunda 02 04 2003 tarihli ek rapor alınmıştır  Davalı Belgamar vekili, bu raporlara da itiraz etmiştir. Son olarak ve mahkeme ara kararında yazılı olduğu üzere gerek, ilk raporun oy çokluğu ile verilmiş olması, gerekse ikinci bilirkişinin zararı hesabına ilişkin raporunun denetime elverişli olmaması nedeniyle dosya üzerinden üçüncü kez ve İstanbul 4 Asliye Ticaret Mahkemesi aracılığıyla üç kişilik heyetten oluşan bilirkişi kurulu aracılığıyla inceleme yaptırılmış ve 01.05.2004 tarihli rapor alınmıştır. Davalı Belgamar –Antwerp /Belçika izafeten En Mar şirketi vekili de alınan bu son  bu rapora da 05 07 2004 tarihli dilekçesinde ileri sürdüğü nedenlerle itiraz etmiştir

1998/570 E  2004/452 K.                                                                    Sayfa. 5

GEREKÇE VE KARAR    :

1-Davacı vekili davalı Liman İşletmeleri A.Ş aleyhinde açmış oldukları davadan feragat etmiştir. Feragat bir tarafın netice-i talebinden vazgeçmesi olup, karşı tarafın kabulune de bağlı değildir. Ve kat'i bir hükmün hukuki sonuçlarını doğurur. (HUMK nun 91-95 maddeleri ) Bu nedenle öncelikle bu davalı aleyhinde açılan davanın feragat nedeniyle reddine karar verilmesi gerekmiş, davalı vekili ücreti vekalet ve yargılama gideri istemediğinden, bu konularda karar verilmesine gerek kalmamıştır.

2-Dava, davacının Finansal Kiralama kanunu uyarınca, kiracısı / işleteni olduğu M/V Kaptan Sefer isimli geminin batması nedeniyle uğranılan zararın tazmini isteğine ilişkindir

A-) USUL YÖNÜNDEN : Davalı Belgamar vekili, hernekadar davacının aktif davacı sıfatı bulunmadığından, davanın husumetten reddine karar verilmesi istemiş ise de, dosyaya ibraz edilen kiralama sözleşmesine göre, batan geminin Sümer Finansal A.Ş. tarafından davacıya kiralanmış olduğu, Finansal Kiralama kanununa göre kiralananda meydana gelebilecek her türlü hasar ve zarardan dolayı kiracının dava hakkı bulunduğu ve zarara neden olan üçüncü kişilere karşı dava açabilmesi yasanın amir hükmü olduğu gibi, uygulamanın da bu yolda olduğu anlaşılmakla, öncelikle iki nolu davalı vekilinin bu yöne ilişkin itirazı yerinde görülmemiştir. Keza iki nolu davalı vekilinin üçüncü bilirkişi kurulunun raporuna karşı verdiği 05.07.2004 tarihli dilekçesinde ileri sürdüğü itirazlardan, yetki itirazının süresinde sonra yapılmış olduğu ve ayrıca sözleşmenin ifa yerinin de Aliağa İlçesinde bulunması nedeniyle, bu itirazı da yerinde görülmemiştir. Ayrıca davalı vekilinin görev itirazı da davaya Asliye Ticaret Mahkemesi sıfatıyla bakıldığından, görev itirazı da doğru görülmemiştir. Aynı davalı vekilinin davanın ihbarı konusundaki istemi ise, HUMK nun 49 maddesine göre ihbarın üçüncü kişiye yapılması gerektiği, bu davalı vekilinin ise diğer davalıya davanın ihbarını istediği gibi, ihbarın mahkeme dışında da Noter aracılığıyla yapılması mümkün olduğundan bu yöne ilişkin isteği de yerinde görülmemiştir.

B-) ESAS YÖNÜNDEN : Toplanan tüm delillere, dosyaya ibraz edilen resmi belgelere, yaptırılan bilirkişi incelemelerine, ve dosya kapsamına uygun görülen ve hükme esas alınması kabul edilen 01.05.2004 tarihli bilirkişi kurulunun raporuna göre;

Dosya içerisinde bulunan ve SAHTELİĞİ İDDİA EDİLMEYEN ve aksi da kanıtlanmayan, 05.11.1997 tarihli, gemi ile yük sahibi/ilgilileri / temsilcileri sigortacılarının (Belgamar-Antwerp / Belçika ile gemi ve yük sahibi arasında yapılan sözleşmeye göre, iki nolu davalıya izafeten davalı En-Mar yetkililerinin HER TÜRLÜ RİSK VE SORUMLULUK KENDİLERİNE AİT OLMAK ÜZERE gemi ambarlarında bulunan yükün boşaltılmasını ve aktarılmasını üstlendikleri sabittir. Bu sözleşmenin sahte olduğu ileri sürülmemiştir. O halde, sözleşmenin tarafı olan davalı bu sözleşmeden dolayı sorumluluğu tartışmasızdır. Her ne kadar davalı En-Mar vekili, izafeten davacıdan asıl davalı ile aralarında akti bir ilişki bulunmadığını savunmuş ise de, tüm resmi belgelerde asile izafeten işlemler yapıldığı da sabittir. Bu davalı yükün aktarılması için hakkındaki davadan feragat edilen Liman İşletmeleri A.Ş ile anlaştığı yine dosyada mevcut tarihsiz anlaşma metninden anlaşılmaktadır. Bu belgeye karşı da sahteliği yolunda bir itiraz ileri sürülmemiştir. Bu anlaşmada, taraflar : Liman sahibi olarak Liman İşletmeleri ve Nakliyecilik San ve Tic A.Ş ile kiracı / yük sahibi olarak En-Mar Vapur Acenteliği Deniz ve Tic A.Ş olarak görünmektedir. Bu anlaşma da, davacı gemi işleteni taraf olarak yer alınmamıştır. Yükün aktarımı işinde tüm yetki ve sorumluluk anlaşmanın tarafı olan En-Mar şirketidir. Bu sözleşme de işin tanımı başlığı altında davalının yüklendiği iş açık ve net olarak belirtilmiştir. Sözleşmeye göre, yükün boşaltılması için kullanılacak her türlü makine, ekipman, vinç kiralanması gibi işlerinde bu davalı tarafından yapılacağı kararlaştırılmıştır. Esasen, davalı En-Mar da bu yüklendiği işin yapımı için vinç kiraladığı hususu da sabittir. Davalı, edimini yerine getirirken hatalı boşaltma nedeniyle geminin önce yan yatmasına ve daha sonra da batmasına neden olduğu hususu da sabittir. TTK nun 119/2 maddesine göre acente aracılıkta bulunduğu şirket adına her türlü sözleşme yapabilir ve bu gibi sözleşmelerde çıkacak ihtilaflardan dolayı acente müvekkili namına dava açabileceği gibi, kendisine karşı da aynı sıfatla dava açılabilir. Eğer acente özel ve yazılı bir muvafakat olmadan müvekkili namına sözleşme yapmış ise, müvekkili icazet vermediğini derhal bildirmediği taktirde icazet verilmiş sayılır. İcazet verilmediği halde, acente akitten bizzat mesuldür. ( TTK.121- 122 maddeleri ) Somut olayda davalı En-Mar pasif davalı sıfatı bulunmadığını savunmuş ise de,

1998/ 570 E  2004/ 452 K.                                              Sayfa 6

yukarıda değinilen yasa hükümleri karşısında, yuk boşaltma sözleşmesini müvekkili adına yaptığı tartışmasızdır. Eğer müvekkili bu sözleşmeye icazet vermemişse sözleşmeden bizzat sorumludur. Öte yandan TTK nun 781 maddesi uyarınca taşıyıcı eşyanın teslim olduğu tarihe kadar geçen müddet içerisinde eşyanın uğradığı zarardan da sorumludur Bu ilke, TTK nun 1061 ve 1062 maddelerinde tekrar edilmiştir Esasen dosyada bulunan ve mahkememiz aracılığıyla yaptırılan her üç bilirkişi incelemesi sonunda alınan üç raporda da tüm bilirkişi heyetlerinin ortak görüşü meydana gelen davalı iki nolu davalının sorumlu ve kusurlu olduğu yolundadır. Sadece ilk bilirkişi kurulundaki aykırı görüş bildiren tek bilirkişi olayda bir nolu davalının da istihdam eden sıfatı ile sorumlu olduğu görüşünü ileri sürmüştür Ancak bu bilirkişinin görüşü dosya kapsamına ve mevcut kanıtlara göre yerinde görülmemiş, zarara neden olan olayda gemi batma olayında tüm sorumluluk ve kusurun iki nolu davalıda olduğu benimsenmiştir Davacının uğradığı zararın hesaplanması konusunda 01.05.2004 tarihli bilirkişi kurulunun raporu, gerek bilirkişilerin uzmanlık alanı, gerekse raporda dosyada bulunan delillere ve olayın özelliğine göre, Deniz Ticareti açısından davacının zararının hesaplanma biçimi yerinde görülmüştür. Esasen son raporda, davacı zararı olarak hesaplanan miktarlarda gerek birinci raporda oy çokluğu ile rapor düzenleyen bilirkişilerin görüşüne, gerekse ikinci raporda görüş bildiren tek bilirkişinin raporuna uygunluk arzettiği, raporun zarar hesabına ilişkin bölümünün geçersiz olduğunu kabul etmek için bir nedende bulunmadığı, bu duruma göre davalının davacının uğradığı MÜSPET VE MENFİİ ZARARLARDAN sorumlu tutulması ilkesine dayalı olarak, davacının zaman Çarteri Sözleşmesi dolayısıyle elde etmesi muhtemel 338 550 ABD Doları, Cer Mukavelesi gereği ödemek zorunda kaldığı 12 000 ABD Doları, Başak Sigorta A Ş nın ödediği Zeyilname Prim bedeli olan 2 370 ABD Doları, davacının Sümer Finansal A Ş.'ye ödediği ilk finansal kira bedeli olan 85 010 ABD Dolarının ve kiralama şirketinin sözleşme nedeniyle davacıdan tahsil ettiği 48.200 ABD Doları olmak üzere toplam 486.080 ABD Doları olan davacı zararının davalı Belgamar-Antwerp/ Belçika Yük Sigortasına izafeten En-Mar Vapur Acentesi A Ş. den tahsiline karar verilmesi gerekmiştir Davanın ve alacağın sözleşmeden kaynaklandığı, bu nedenle alacağın yabancı para olarak istenilmesinde B K nun 83 maddesine bir aykırılık görülmediğinden, hüküm yabancı para üzerinden tesis ediliştir

        H Ü K Ü M  : Yukarıda açıklanan gerekçelere göre

        1) a-Davalı Liman İşletmeleri ve Nakliyat San A.Ş aleyhinde açılan davanın FERAGAT nedeniyle REDDİNE,

        b-Alınması gerekli 10.100.000 TL maktu red harcının peşin yatırılan harçtan mahsubu ile davacı üzerinde bırakılmasına,

        c-Davacının bu davalı aleyhinde yapmış olduğu yargılama giderinin üzerinde bırakılmasına,

        d-Davalı vekili, yargılama gideri istemediğinden davalının yaptığı yargılama giderinin üzerinde bırakılmasına,

        e-Davalı vekili ücreti vekalet istemediğinden, davalı lehine ücreti vekalet taktirine yer olmadığına,

        2-) Davalı Belgamar-Antwerp/Belçika Yük Sigortasına izafeten En-Mar Vapur Acentası Deniz ve Tic A.Ş. aleyhine açılan davanın KISMEN KABULÜ ile, 486 080 ABD Dolarının fiili ödeme günündeki T C. Merkez Bankası efektif satış kurundan Türk Lirası karşılığının davalıdan alınıp, davacıya verilmesine. hükmedilen bu miktara dava tarihinden itibaren 3095 Sayılı Yasanın 4/2 maddesine göre, Devlet Bankalarınca bir yıl vadeli dolar hesabına uygulanan en yüksek faiz yürütülmesine, fazlaya dair isteğin reddine,

        3-) Kabul edilen miktar üzerinde ve 486.080 ABD Dolarının dava tarihindeki Türk Lirası karşılığı 145 824.496.000 TL üzerinden alınması gereken 7 874.496.000 TL nisbi harcın davacının peşin yatırdığı 1 350.000.000 TL harçtan mahsubu ile bakiye 6.524 496.000 TL harcın öncelikle davacıdan tahsiline,

        4-) Davacının yapmış olduğu ve aşağıda dökümü gösterilen 9 375.969.000 TL yargılama giderinden davanın red ve kabul oranları dikkate alınarak, taktiren 9 005 435.700 TL yargılama

1998/ 570 E  2004/ 452 K                                          Sayfa 7

giderinin davalı Belgamar-Antwerp/ Belçika Yük Sigortasına izafeten En-Mar Vapur Acentası Deniz ve Tic A Ş  den alınıp, davacıya verilmesine, bakiye giderin davacı üzerinde bırakılmasına,

5-) Davalı Belgamar- Antwerp / Belçika Yuk Sigortasına izafeten En-Mar Vapur Acentası Deniz ve Tic.A Ş  nin yaptığı yargılama giderinin taktiren üzerinde bırakılmasına,

6-) Kabul edilen 486.080 ABD Dolarının dava tarihindeki Türk Lirası karşılığı 145.824.000.000 TL. üzerinden ve hüküm tarihindeki avukatlık asgari ücret tarifesine göre hesaplanan 10.134.920.000 TL. nisbi ücreti vekaletin davalı Belgamar-Antwerp/ Belçika Yük Sigortasına izafeten En-Mar Vapur Acentası Deniz ve Tic.A.Ş. den alınıp, davacıya verilmesine,

7-) Red edilen miktar olan 13.910 ABD Dolarının dava tarihindeki Türk Lirası karşılığı 4.176.000.000.TL. üzerinden ve hüküm tarihindeki Avukatlık Asgari ücret tarifesine göre hesaplanan 501.120.000.TL. nisbi ücreti vekaletin davacıdan alınıp, davalı Belgamar-Antwerp/ Belçika Yük Sigortasına izafeten En-Mar Vapur Acentası Deniz ve Tic A.Ş./ye verilmesine,

Dair, davacı vekili ile davalı Belgamar-Antwerp/Belçika Yük Sigortasına izafeten En-Mar Vapur Acentası Deniz ve Tic A.Ş. vekilinin yüzlerine karşı, Yasa yolları açık olmak üzere verilen karar, açıkça okundu, usulen anlatıldı.29.09 2004

Katip 18                                                            Hakim 24752

                            MASRAF DÖKÜMÜ
              774.000  TL.  Başvurma Harcı
        7.874.496.000  TL.  Peşin Harç
              149.000  TL.  Vekalet Harcı
            2.250.000  TL.  3 Tebligat Gideri
          225.000.000  TL.  3 Kişilik Bilirkişi Ücreti
            3.750.000  TL.  3 Tebligat Gideri
            7.000.000  TL.  Bilirkişiye Dosya Sevk Gideri
            5.000.000  TL.  APS olarak 2 tebligat gideri
          100.000.000  TL.  Bilirkişi ücreti
            1.750.000  TL.  1 Tebligat gideri
            6.000.000  TL.  Müzekkere Gideri
            8.500.000  TL.  Dosya Sevk Gideri
            1.750.000  TL.  1 Tebligat Gideri
          150.000.000  TL.  Bilirkişi Ücreti
          100.000.000  TL.  Bilirkişi Ücreti
            3.000.000  TL.  Müzekkere Gideri
           15.250.000  TL.  Dosya Sevk Gideri
            8.000.000  TL.  APS Tebligat Gideri
          750.000.000  TL.  3 Kişilik Bilirkişi Ücreti
           10.500.000  TL.  3 Tebligat Gideri
           42.800.000  TL.  Dosya Sevk Gideri
        9.315.969.000 TL.  TOPLAM

# EXHIBIT 3

06-MAR-2008 15:42 From:

11 06 02:53

S. 2

√  slevel

T.C.
YARGITAY
ONBİRİNCİ HUKUK DAİRESİ
ESAS.                    KARAR
2005/1018              2006/3389

YARGITAY KARARI

MAHKEMESİ       :Aliağa Asliye Hukuk Mahkemesi
GÜNÜ            :29.09.2004
SAYISI          :1998/570-2004/452
DAVACI          :Abu Trans Denizcilik Ltd. Şti.   Vekili:Av. Özlem Şan Oğuzhan
DAVALILAR       :1-Liman İşletmeleri ve Nak. San. ve Tic. A.Ş   Vekili:Av. Tahsin Çağala
                 2-Belgamar-Antwerp'e İza. En-Mar Vapur Acenteliği Deniz ve Tic. A.Ş
                 Vekili:Av. İzzet Hatem

Taraflar arasında görülen davada Aliağa Asliye Hukuk Mahkemesi'nce verilen 29.0
tarih ve 1998/570-2004/452 sayılı kararın Yargıtay'ca incelenmesi duruşmalı olarak davalı
Belgamar-Antwerp'e İza. En-Mar Vapur Acenteliği Deniz ve Tic. A.Ş. vekili tarafından isto
olmakla, duruşma için belirlenen 28.03.2006 günde davacı avukatı Necdet Okçu ile davalı
Belgamar-Antwerp'e İza. En-Mar Vapur Acenteliği Deniz ve Tic. A.Ş. avukatları İzzet Hate
Erdoğan Derin gelip, temyiz dilekçesinin de süresinde verildiği anlaşıldıktan ve duruşmada
bulunan taraflar avukatları dinlenildikten sonra, duruşmalı işlerin yoğunluğu ve süre darlığı
öürü işin incelenerek karara bağlanması ileriye bırakılmıştı. Dava dosyası için Tetkik Hakimi
Arslan tarafından düzenlenen rapor dinlenildikten ve yine dosya içerisindeki dilekçe, layıha
duruşma tutanakları ve tüm belgeler okunup incelendikten sonra işin gereği görüşülüp, düşünüldü

Davacı vekili, müvekkilince işletilen geminin Romanya'dan yüklenen rulo sac yü
Yunanistan'a taşıma işi sırasında makine arızası sonucu Aliağa limanına demirlediğini,
raporunun düzenlenmesinden sonra müşterek avarya ilan edildiğini, başka bir gemiyle gönder
üzere yükün yük sigortacısının acentesi olan davalı tarafından aktarma işlemi sırasında anıb,
yükün kaydırılmasına bağlı olarak geminin battığını, davalıların sorumlu olduğunu ileri sürerek
bedeli tutarı ve batık geminin çıkarılması giderleri toplamı (500.000) USD.nin davalılardan tah
talep etmiş, daha sonra Liman İşl. A.Ş.ne yönelik davadan feragat etmiştir.

Davalı Belgamar Acentesi En-Mar A.Ş. vekili cevabında, müvekkilinin Belgamar adlı B
firmasının acentesi olmadığından husumet yöneltilemeyeceğini, esasen bu firmanın da dava ko
uyuşmazlıkla ilgisinin bulunmadığını savunmuştur.

Mahkemece sunulan ve toplanan kanıtlar ile bilirkişi raporlarına dayanılarak, geminin tan
kiracısı olan davacının dava hakkının bulunduğu, yetki itirazının süresinden sonra yapı
05.11.1997 tarihli sözleşmeyle davalı En-Mar A.Ş.nin Belgamar'a izafeten her türlü ras
sorumluluğu uhdesinde bağlı olmak üzere gemi ambarlarındaki yükün tahliye ve aktarılmasını üstlen
bu işi kusurlu ifası sonucu geminin batmasından dolayı davacının uğradığı toplam (486.080)
zarardan sorumlu olduğu gerekçesiyle anılan meblağın faiziyle bu davalıdan tahsiline, diğer dav
yönelik davanın feragat nedeniyle reddine karar verilmiştir.

Kararı, davalılardan Belgamar-Antwerp'e İza. En-Mar Vapur Acenteliği Deniz ve Tic
vekili temyiz etmiştir.

2005/1018
2006/3389

### S.2

1- Dava dosyası içerisindeki bilgi ve belgelere, mahkeme kararının gerekçesinde de delillerin tartışılıp, değerlendirilmesinde usul ve yasaya aykırı bir yön bulunmamasına ve dıp finansal kiracı sıfatı ile işletme müteahhidi bulunduğu yük gemisinin Romanya-Yunanistan sırasında Bozcaada açıklarında makine arızası suretiyle müşterek avaryaya girmesinden son sigortacısı davalı Belgamar ile birlikte diğer gemi ve yük ilgililerinin katıldığı 05.11.199 sözleşmeyle kararlaştırılan önlemler doğrultusunda geminin yanaştırıldığı en yakın güvenilir li tutulan davalının acentesi olan En-Mar A.Ş.nin liman işletmecisi olan diğer davalı ile sözleşme uyarınca üstlendiği yükün başka bir gemiye aktarılması sırasında geminin batmasa dolayı Belgamar'a izafeten acentesine husumet yöneltilmesinde usule aykırılık bulunmas esasen hükmün de Belgamar'a izafeten kurulmuş olmasına, derdestlik itirazına dayanak gös tahkim davasının taraflarının farklı olması nedeniyle bu itirazın yerinde görülmemesine, davac olan diğer davalı Liman İşlt. A.Ş. hakkındaki davanın reddinden sonra ileri sürülen yetki it zararın meydana geldiği yer itibariyle doğru olmadığı gibi anılan davalıya ayrıca davan istemine yersiz bulunmasına ve hakkında bir karar verilmemiş olsa da zaman aşımı def'inin batma olayından sonra bir yıl içinde açılması nedeniyle yerinde olmamasına göre, dava Belgamar'a izafeten acentesi vekilince aşağıdaki bent dışında kalan ve yerinde görülmeye *temyiz itirazlarının reddi gerekmiştir.*

2-*Ancak, zarar kalemleri ve miktarlarının temyiz denetimine olanak verecek aç belirlenmemesi istenebilirlik koşullarının irdelenerek saptanmaması doğru görülmemiştir.*

Her şeyden önce, davacı gemi işletme müteahhidinin geminin müşterek avaryaya girme sonra dava dışı bir şirketle yapılan 15.11.1997 tarihli sözleşmeyle 6 ay+6 ay süreli zaman sözleşmesiyle gemiyi kiraya vermesine *tarafı bulunduğu finansal kiralama sözleşme* hükümlerinin engel oluşturduğu yolundaki savunma üzerinde durulmamış, bu husus aydınlatıl sözü edilen bu sözleşme nedeniyle yoksun *kalınan muhtemel kazanç adı altında tazminatın tü* kalemi olarak (338.000) USD.nin tahsiline karar verilmesi eksik incelemeye dayalı bulunm Ayrıca, bu kalemle ilgili olarak geminin batmaması halinde önceden ortaya çıkan arızanın ne sürede giderilebileceğinin, bu yön 15.11.1997 tarihi itibariyle belirsizse yeni sözleşme yapılm denizcilik teamüllerine uygunluğunun değerlendirilmemesi ve davacının sözleşmeye konu g batması üzerine gemi kiralama edimini başka uşullerle ifaya yönelik girişimlerinin olup olmadı kiracısına ikame çözümü eylemi olarak gerçekleştirip gerçekleştirmediği saptanmadan be tazminat kalemine hükmedilmesi de doğru olmamıştır.

Öte yandan, davacının finansal kiralama sözleşmesine dayalı ödemeleri, tekne sigorta ödemesi, batma nedeniyle finansal kiralama şirketine yaptığı ödeme ve cer sözleşmesine d ödemesi ile ilgili olarak hesaplanan miktarlara yönelik davalı vekilince 05.07.2004 tarihli dilem ileri sürülen ciddi ve kapsamlı itirazlar aşılmadan, kabul edilen bu ödemelerin davacı defterl yansıma durumu, gerçekliği ve davalı yük sigortasının eylemi sonucu geminin batmasından ortaya çıkan durumla uygun nedensellik bağının tazminat hukuku ilkeleri ışığında ispatı zorunl gözetilmeden değinilen kalemlerin tazminata dahil edilmesi doğru görülmemiş, bu hususlara temyiz itirazlarının kabulü gerekmiştir.

26 11 06 02:54                                                              ~.4

2005·1018
2006/3589

S.3

SONUÇ: Yukarıda (1) nolu bentteki nedenlerle davalılardan Belgamar-Antwerp'e İza
Mar Vapur Acenteliği Deniz ve Tic. A.Ş. vekilinin diğer temyiz itirazlarının REDDİNE, (2) nr
bentte açıklanan nedenlerle kararın anılan davalı yararına BOZULMASINA, takdir edilen 45 .
YTL. duruşma vekillik ücretinin davacıdan alınarak davalılardan Belgamar-Antwerp'e İza Er
Vapur Acenteliği Deniz ve Tic. A.Ş.ne verilmesine, ödediği temyiz peşin harcın isteği hai...
temyiz edene iadesine, 30.03.2006 tarihinde oybirliğiyle karar verildi.

| Başkan | Üye | Üye | Üye | Üye |
|---|---|---|---|---|
| Yurdaer Özdilek | A.Özgan | M.Gökdemir | L.Yavuz | H.G.Vuraloğlı |

18 04 2006 İD

