Michael J. Frevola
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
TASFIYE HALINDE AHU TRANS DENIZCILIK
VE TICARET LIMITED SIRKETI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TASFIYE HALINDE AHU TRANS DENIZCILIK VE TICARET
LIMITED SIRKETI,

         Plaintiff,

-against-

NATEUS VERZEKERINGEN f/k/a BELGAMAR BELGISCHE
ZEEVERZEKERINGSMAATSCHAPPIJ N.V. a/k/a
COMPANIE BELGE D'ASSURANCES MARITIMES S.A.,

         Defendant.

08 Civ. 2511 (JGK)

**AMENDED**
**VERIFIED**
**COMPLAINT**

---

Plaintiff, Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi ("Ahu Trans" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its amended verified complaint against Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. ("Nateus" or "Defendant"), alleges as follows:

1.  This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.  At all times material herein, Ahu Trans is and was a foreign business entity organized and existing under the laws of Turkey.

3.  Upon information and belief, at all times material herein, defendant Nateus is and was a business entity organized and existing under the laws of Belgium with its principal place of business at Frankrijklei 79, 2000 Antwerp, Belgium.

4.  At all times material herein, Ahu Trans was the owner of the M/V KAPTAN SEFER ("Vessel").

5.  At the time of the incident that is the subject matter of this action, the full name of Defendant was "Belgamar Belgische Zeeverzekeringsmaatschappij N.V." (in Flemish) and "Companie Belge D'assurances Maritimes S.A." (in French). The present name of Defendant after a series of mergers is "Nateus Verzekeringen."

6.  On our about September 30, 1997, the Vessel suffered main engine failure during a voyage from Galatz, Romania to Eleusis, Greece (the "Voyage"). As a result, the Vessel called at Aliaga Port, Turkey.

7.  Nateus was the cargo underwriter of the cargo aboard the Vessel during the Voyage.

8.  Subsequently, general average was declared and the concerned parties agreed to transfer the cargo to another vessel. To this end, Ahu Trans and Nateus entered into a contract. Specifically, the parties agreed that "[t]ransshipment of the cargo will be carried out by cargo interests at their expense at NEMRUT Port, Aliaga Bay on to a chartered 'On Carrying' vessel for

delivery to Eleusis." A true and correct copy of the contract between Ahu Trans and Nateus is annexed hereto as Exhibit 1.

9. Although Nateus undertook to transfer the cargo, the actual transfer of the cargo was performed by an agent of Nateus.

10. On or about November 24, 1997, during the transshipment of the cargo from the Vessel, a load of approximately 15 metric tons of cargo fell into the hold of the Vessel causing a sudden movement of the Vessel to the port side and a list of approximately 30-40 degrees. Due to this sudden movement, the cargo remaining on board the Vessel shifted and struck the Vessel's holds' bulkheads and damaged the Vessel's hull.

11. As a result of the damage caused by the aforementioned incident, the Vessel flooded and sank within three hours of sustaining the aforementioned damage.

12. Nateus' damaging of the Vessel, which caused it to sink, was a breach of its contract to transship the cargo from the Vessel.

13. Nateus' damaging of the Vessel, which caused it to sink, also was due to Nateus' negligence, whereby Nateus breached its duty to safely discharge the Vessel, which breach damaged Ahu Trans through the loss of the Vessel.

14. Based on Ahu Trans' loss of the Vessel, Nateus has damaged Ahu Trans in an amount estimated to be US$1,176,722.00.

15. Upon information and belief it will take an three years to bring this dispute to conclusion, resulting in the following estimated interest to accrue:

| | |
|---|---|
| Interest (6% on $1,176,722.00 for three years): | $ 211,809.96 |
| Total Principal Claim: | $1,176,722.00 |
| Total Sought: | **$1,388,531.96** |

16. Nateus is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name(s) of Nateus Verzekeringen and/or Belgamar Belgische Zeeverzekeringsmaatschappij N.V. and/or Companie Belge D'Assurances Maritimes S.A. with, upon information and belief, the following financial institutions: Bank of America, N.A.; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; or any other financial institution within the Southern District of New York.

**WHEREFORE**, Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi prays:

1. That a summons with process of attachment and garnishment may issue against the defendant, Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A.; and if defendant cannot be found, then that its goods, chattels and credits within the district, and particularly all bank accounts and other property of Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. with the financial institutions noted above in paragraph 16, may be attached in an amount sufficient to answer plaintiff's claim;

2. That defendant Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi and against Nateus Verzekeringen f/k/a Belgamar Belgische Zeeverzekeringsmaatschappij N.V. a/k/a Companie Belge D'Assurances Maritimes S.A. in the amount of US$1,388,531.96 (including estimated interest); and,

4. That this Court grant Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi such other and further relief which it may deem just and proper.

Dated: New York, New York
April 3, 2008

HOLLAND & KNIGHT LLP

By: /s/ Michael J. Frevola

Michael J. Frevola
Lissa Schaupp
195 Broadway
New York, NY 10007-3189
Tel:  (212) 513-3200
Fax:  (212) 385-9010

*Attorneys for Plaintiff*
*Tasfiye Halinde Ahu Trans Denizcilik*
*ve Ticaret Limited Sirketi*

## VERIFICATION

STATE OF NEW YORK )
                  :ss.:
COUNTY OF NEW YORK )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Tasfiye Halinde Ahu Trans Denizcilik ve Ticaret Limited Sirketi ("Ahu Trans"), plaintiff in the foregoing action. I have read the foregoing Amended Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Ahu Trans and corresponded with Ahu Trans' representatives regarding this matter. I am authorized by Ahu Trans to make this verification, and the reason for my making it as opposed to an officer or director of Ahu Trans is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola

Sworn to before me this
3rd day of April, 2008

_____
Notary Public

PETER FALISI
Notary Public, State of New York
No. 01FA6039613
Qualified in New York County
Commission Expires April 3, 2010

# 5240250_v1

6

# EXHIBIT 1

"
# AGREEMENT.

By virtue of a 'Gencon' Charter Party dated 17th, September, 1997 entered in to by BALKANMAR, hereafter referred to as the 'Charterers' and AHUTRANS DENIZCILIK Ve TICARET Ltd., operators/disponent owners for and on behalf of SUMER FINANSAL KIRALAMA A.S., hereafter referred to as the 'Owner', the "KAPTAN SEFER" was chartered to load a full cargo of hot rolled steel coils at Galatz, Romania for delivery at Eleusis, Greece. The the ship loaded 112 hot rolled steel coils as per the Bill of Lading and sailed from Galatz on 26th. September, 1997

On 1st. October, 1997 the "KAPTAN SEFER" whilst on passage off Bozcaada developed problems with the main engine. The vessel commenced to drift and this condition still pertained at 06:00 hours on 2nd. October. The "GONULTAS" under the same operator and owned by ALTUG DENIZCILIK DISCARET Ltd., was in the vicinity and was ordered to assist the "KAPTAN SEFER" and arrived at the scene at 11:00 hours on 3rd. October and signed a salvage agreement under the TOF terms. Tow connections were established by 14:50 hours the same day and the tow commenced toward the nearest available safe anchorage, Bababurnu due to the prevailing adverse weather conditions. Later, following further inspections of the main engine it was evident that it could not be repaired by the crew. Accordingly, the vessel was towed to the nearest safe port of refuge, Aliaga. The convoy arrived at Aliaga in the morning of 6th. October where the vessel was redelivered.

Subsequent investigations of the main engine determined that the extent of damage was such that the main engine could not be repaired within a reasonable time and at a reasonable cost.

Without prejudice to rights arising out of this matter, the following is provisionally agreed by the signatories to this agreement:

1- It was established by both parties that transshipment of the cargo was a prudent course of action for all interests concerned.

03 MAR-2008 12:56 From:                                To:90 212 2192727        P.1
         05/11'97  13:22    ☎ 003014524514        JJB MODIANO CZ        P.03

2- The cargo shall be delivered and received by the receivers at Nemrut Port, Aliaga Bay in return for :
- two remaining original Bills of Lading, and
- payment of US Dollars 30,000.00 as cargo interests contribution. (The method of payment to be agreed separately).

3- In conjunction with the Owner issuing a delivery order, the Owner will give the original EURO 1 Certificate to the cargo interests.

4 - Both parties to this agreement will release and discharge each other from all claims arising out of the salvage operation.

5- Transshipment of the cargo will be carried out by cargo interests at their expense at NEMRUT Port, Aliaga Bay on to a chartered 'On Carrying' vessel for delivery to Eleusis. The estimated expenditure for which is US Dollars 49,000.00 including, freight (21,000.00 USD) and local towage and other expenses at Aliaga (28,000.00 USD.) which will be paid by cargo interests.

6- The Owner undertakes to assist in this operation by obtaining the necessary permits, custom's clearance, other documentation and formalities required by the Turkish authorities. In addition, the Owner shall assist with the chartering of the replacement vessel.

7 - If the Owner undertakes to arrange the 'On carriage' from Nemrut Port, Aliaga Bay to Eleusis under "Ship to ship, liner in free out" terms, same conditions as per the previous voyage for a lump sum of US Dollars 49,000.00 including towage, freight and other expenses, this amount to be remitted to the Owner before commencement of the operation, (method of payment to be agreed separately). After delivery of all three (3) original Bills of Lading issued by the new ship, the Owner will be released from all related liabilities.

8- The cargo shall be supervised/surveyed jointly by cargo interests and the owner's representative/P&I Club Surveyor at Nemrut Port, Aliaga Bay.

9 - For General Average purposes,
   - the value of the cargo is considered as US Dollars 551,967.00 C&F. The residual value of the vessel (after the casualty) is stated to be US Dollars 500,000.00.

10 - The salvage service rendered by the "GONULTAS" is assessed to be US Dollars 78,898.00.

11 - This agreement is subject to the approval of the following interested parties:-
   a) Cargo Receivers,
   b) Charterers,
   d) Owner's Underwriters'
   e) Vessel's P&I Club.
   c) Cargo Underwriters,

For and on behalf of
Cargo receivers, Charterers and Cargo Underwriters concerned;

*[signature]*

5. Nov 1997

by authority as agent.

As owners of mv Kaptan Safak
*[signature]*  10.11.1997